**UNITED STATES of America, Plaintiff,**

v.

**$100,000 IN UNITED STATES CURRENCY, Defendant in Rem.**

**No. 84 Civ. 7139 CLB.**

United States District Court, S.D. New York.

Feb. 8, 1985.

Franklin H. Stone, Asst. U.S. Atty., S.D. N.Y., New York City, for plaintiff.

O.T. Wells, New York City, for defendant in rem.

### MEMORANDUM AND ORDER

BRIEANT, District Judge.

On October 3, 1984 the United States filed this action in rem for a forfeiture, pursuant to 21 U.S.C. § 881(a)(6) and (d) which incorporates by reference 19 U.S.C. § 1602, *et seq.*, seeking forfeiture of the sum of $100,000 in United States currency, in the form of a certificate of deposit, said to represent funds "furnished or intended to be furnished by any person in exchange for a controlled substance. in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter...."

Claimant Jose Martinez-Torres ("Torres") has appeared by counsel and filed a declaration that he and his wife Nancy Medina ("Medina") are the owners of the funds and that the money comes not from the crystalline white powder but was

won in the Puerto Rican lottery. The Government now seeks summary judgment in its favor, relying essentially on issue preclusion, or offensive collateral estoppel, as set forth below.

■ Under 19 U.S.C. § 1615 the burden of proof in forfeiture proceedings is imposed on claimants, provided that "probable cause shall be first shown for the institution of such suit or action, to be judged of by the court." As soon as the Government has met its burden of establishing probable cause, the burden of going forward shifts to the claimant to establish that the res is not subject to forfeiture. *United States v. One 1977 Lincoln Mark V, etc.,* 453 F.Supp. 1388 (S.D.N.Y.1978).

This Court concludes that the Government is entitled to partial summary judgment in its favor on the issue of probable cause, but that claimants are entitled to a plenary trial on the issue of whether the funds are proceeds of or intended to be used in illegal transaction(s) in narcotics. On this point, claimants will have the burden of proof, but should not be precluded from trying the issue. The facts set forth below are essentially not in dispute.

On November 13, 1982 claimants Torres and Medina were each convicted under docket 82 Cr. 489 before a Judge of this Court of violations of the federal narcotics laws. The charges involved a major wholesale narcotics organization in this district which sold more than a Million Dollars worth of heroin and cocaine during the first six months of 1982. On August 30, 1982, prior to trial, the assigned judge conducted a hearing as to the source of funds offered for bail, pursuant to *United States v. Nebbia,* 357 F.2d 303 (2d Cir.1966) now codified by statute effective October 12, 1984 as 18 U.S.C. § 3142(g)(4). The certificate of deposit sought to be forfeited in this case is the same certificate which had been offered to secure Medina's bail in 82 Cr. 489, and which was the subject of the *Nebbia* hearing.

At the *Nebbia* hearing, Medina testified that as she claims here, the certificate of deposit which she posted as bail was derived from money she won in a Puerto Rican lottery. The judge found this testimony incredible, observing the unlikelihood, when tested by common sense, that "someone with no job, no steady source of income, and no other bank accounts would (a) use the relatively sophisticated device of a certificate of deposit; and (b) put the *entire* $100,000 won in a lottery in such a certificate, making the money totally unavailable to her for a period of time." (Op. dated August 30, 1982 in 82 Cr. 489, emphasis in original). Also relied on in addition to the inherent implausibility of claimant's testimony was the fact that after the lottery took place, defendant had signed an affidavit stating she had no property, in order to support a request for assigned counsel in her criminal case. Id.

■ Also submitted by the Government in support of the instant motion is the testimony of Torres taken at a suppression hearing held October 4 and 5, 1982, in the criminal case. There, Torres testified that he had lived with claimant Nancy Medina in a Bronx apartment used from time to time as a place to warehouse and cut drugs, and conceded under oath that he was engaged in the heroin business in this district under the brand name "Latunba." The foregoing evidence considered together with the criminal conviction of Torres and Medina is more than sufficient to discharge the Government's initial burden to show probable cause to believe that such a substantial sum of money is more likely than not the proceeds of past unlawful dealing in controlled substances. Although the res itself is the nominal defendant, claimants are the real party in interest and should be considered so for purposes of collateral estoppel.

■ The difficulties with the argument on this motion that there should be issue preclusion or offensive collateral estoppel to prevent claimants from proving in this action that the funds are, as alleged, lottery winnings, or at least that they are not within 21 U.S.C. § 881(a)(6) above quoted, are both specific and general. The specific

difficulty is that the Court which conducted the *Nebbia* hearing made only the necessary finding that the purposes of fixing bail required, namely that the contention, based solely on Medina's interested testimony, that the funds came from lottery winnings was "incredible," and that it was more likely that the funds "were obtained from illegal activity," of a sort not specified, or that "defendant has another illegal source of income." (Op. dated August 30, 1982, *supra*). This is not a finding that the funds were derived from or intended to be used in the heroin business or controlled substances; merely any illegal activity, state or federal. There is a more general difficulty however, which we discuss below.

Any consideration of federal issue preclusion by a prior judgment must begin with *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In *Parklane*, a stockholders' class action alleged that Parklane Hosiery Co., Inc. and 13 of its officers, directors and shareholders had issued a materially false and misleading proxy statement used to effect a merger. Damages and rescission of the merger were sought. Defendants demanded a trial by jury. Previously, the Securities and Exchange Commission ("SEC") had sued the same defendants in equity in this district to enjoin statutory violations, based on the same allegations that the same proxy statement was materially false and misleading. After a plenary four-day bench trial the district court found that it was, and entered a declaratory judgment to that effect which was affirmed on appeal. In the later filed stockholders' class action, the Court of Appeals held that "a party who has had issues of fact determined against him after a full and fair opportunity to litigate in a non-jury trial is collaterally estopped from obtaining a subsequent jury trial of these same issues of fact." (439 U.S. 322 at 325, 99 S.Ct. 645 at 648, 58 L.Ed.2d 552). The Supreme Court affirmed, with Justice Rehnquist dissenting, and characterized the issue presented as one involving "offensive use of collateral estoppel," citing *Blonder-Tongue Laboratories v. University of Illinois Founda-*

*tion*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971), a patent case approving defensive use of collateral estoppel.

Before the Court in *Parklane* opened Pandora's box to release the doctrine of offensive collateral estoppel upon litigants, the majority opinion noted that in certain cases use of its new device might be "unfair to a defendant." *Id.* 439 U.S. at 330, 99 S.Ct. at 651. Cited as familiar examples of such unfairness were the case where the first suit is for small or nominal damages, not justifying a full defense, "particularly if future suits are not foreseeable"; the case where the prior judgment relied on is itself inconsistent with one or more previous judgments in favor of the defendant; and the case where the second action affords the defendant procedural opportunities "unavailable in the first action that could readily cause a different result." *Id.* at 331, 99 S.Ct. at 651. As footnote 15 to the last of its series of hypotheticals, the Court postulated an "inconvenient forum," and an inability to "engage in full scale discovery or call witnesses." The Court held (at p. 331, 99 S.Ct. at p. 651–652):

"We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied [footnote 16 omitted]. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."

The instant case would seem well within the last mentioned example of possible unfairness postulated by the Court in *Parklane, supra*. A *Nebbia* hearing, as now codified by statute, is usually conducted on very short notice. A criminal defendant is arrested and brought before a judicial officer, an amount of bail is fixed, and, often

to the surprise of that defendant, a *Nebbia* hearing is demanded by the Government as soon as he proffers the bail. Because liberty is at stake, the court moves promptly. The rules concerning the admissibility of evidence in criminal trials do not apply. See § 3142(f) of the Comprehensive Crime Control Act of 1984 effective October 12, 1984 but regarded as declaratory of existing law on this point. There is no time for investigation and preparation.

Besides receiving a quick and immediate hearing at which the rules of evidence don't apply, a surety or a defendant in a bail hearing will not receive any pre-trial discovery. There is no time for it. Attendance at such hearings of non-party witnesses such as banks and lottery commissioners is rare indeed, and much for the same reasons. No jury is available, and seldom is there much opportunity for study and reflection by the judicial officer presiding, whose decision usually is rendered orally and immediately.

In an analogous situation, Judge Keenan of this Court recognized that offensive collateral estoppel should not be invoked when to do so would be unfair. In *SCAC Transport (USA) Inc. v. S.S. DANAOS, etc.,* 578 F.Supp. 327 (S.D.N.Y.1984), it appeared that maritime arbitrators had found in a proceeding between a vessel owner and the charterer, that damage suffered by the vessel in a loading accident was the fault of the stevedore employed by the charterer, rather than due to a defect in the vessel's equipment. The stevedore had been invited to defend the arbitration ("vouched in") but declined. In subsequent litigation between the charterer and the stevedore, the Court declined to invoke *Parklane,* holding:

> "This court is reluctant to bind [stevedore] to the findings of the London arbitrators. Although given an opportunity to join in that proceeding, [stevedore] did not participate in it. One consideration in determining whether a party should be estopped from litigating an issue determined in a prior action is whether the subsequent action affords the party to be

etopped procedural opportunities unavailable in the first action that could readily cause a different result. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 323, 331–32, 99 S.Ct. 645, 647, 651–52, 58 L.Ed.2d 552 (1979). Arbitration permits a relatively prompt and inexpensive resolution of contractual disputes by avoiding time-consuming court procedures and is subject to limited review. *See Sperry International Trade, Inc. v. Israel,* 532 F.Supp. 901, 905 (S.D.N.Y.1982), *affirmed,* 689 F.2d 301 (2d Cir.1982). Parties are bound by the results of these proceedings because they have agreed to resolve their disputes in an arbitral, rather than judicial, forum. *See United States Steel Workers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Coudert v. Paine Webber,* 705 F.2d 78, 81 (2d Cir.1983). By consenting to arbitration a party relinquishes certain rights and safeguards provided by the judicial system. [Citations omitted]. If a party does not consent to arbitration, however, it retains these rights and should not be bound by an arbitration award.

In this case, [stevedore] did not consent to the resolution of its disputes by arbitrators in London. All of the cases cited by the movants to support the validity of voucher in arbitration proceedings involved their parties that in some manner had consented to be bound by arbitration of the dispute in question." 578 F.Supp. at 330.

We do not suggest that the factual findings at a *Nebbia* hearing could never give rise to offensive collateral estoppel under *Parklane,* but certainly such cases will be rare. Given time enough and some pre-trial discovery from third parties, claimants in this case might be able to develop a paper trail left by the money on its claimed journey from the lottery commissioners or wherever to the issuing bank, Banco Popular. Ordinary banking practice suggests that a customer file is usually created by a bank before it engages in a transaction of this magnitude and such records if they

exist may resolve the case without dependence on the oral testimony of felons interested in the outcome. Contemporaneous records of the lottery may also assist in resolving the remaining issues in this case. Winnings of such size as this are generally publicized by the lottery in order to induce others to invest therein, and usually the seller and the issuer find a need to possess contemporaneous records. Rather than be precluded under *Parklane*, claimants should have an opportunity with adequate investigation and pre-trial preparation, to attempt to discharge their burden of proof that these funds have a legitimate source and do not represent the proceeds of federal crimes.

A pre-trial status and scheduling conference of counsel will be held before the Court on March 27, 1985 at 9:30 A.M. in Courtroom 705.

So Ordered.