**STATE of Wyoming,**
**Appellant (Plaintiff),**

v.

**ELEVEN THOUSAND THREE HUNDRED FORTY-SIX DOLLARS AND NO CENTS IN UNITED STATES CURRENCY, Appellee (Defendant).**

No. 88–227.

Supreme Court of Wyoming.

July 7, 1989.

Russell A. Hansen, Asst. Atty. Gen., for appellant.

Gayla L. Daniels and Kenneth W. Hildebrand, Casper, for appellee; argument by Ms. Daniels.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

The State of Wyoming seized $11,346.00 from Terry Davis Jaeger and initiated civil forfeiture proceedings against the money, asserting that it had been used to facilitate the sale of certain controlled substances. The district court determined that the State had not established probable cause to believe that the money was used or intended to be used in violation of the Wyoming Controlled Substance Act of 1971, W.S. 35–7–1001 through 35–7–1057, and, therefore, granted Jaeger's motion for summary judgment.

We affirm.

During the course of a narcotics investigation, the Gillette Police Department made three controlled purchases of methamphetamine. On each occasion the Department furnished "buy money" to a confidential informant with the intent of tracing the chain of transfers of that money to the ultimate supplier of the drugs. Surveillance teams observing the third purchase on April 13, 1987, followed that trail to Jaeger's automotive repair shop. Officers approached Jaeger for identification and, as he produced his driver's license, observed a large amount of currency in his wallet. At their request, Jaeger permitted the officers to inspect the money and compare it to photocopies of the bills which they had provided to their informant earlier that evening. No matches were found. Nevertheless, the officers detained Jaeger for nearly two hours, until they were able to match some of his money with photocopies of bills provided for two earlier methamphetamine purchases. He was then arrested and charged with one count of conspiracy to deliver a controlled substance.

Subsequently, on May 27, 1987, the State brought an action under W.S. 35–7–1049 seeking forfeiture of the money seized from Jaeger. Jaeger filed a motion to suppress the money as evidence in the pending criminal action. The district court's order granting that motion states, in pertinent part:

"1. That no probable cause existed for a search of Defendant or a seizure of evidence from Defendant and the Defendant did not consent to the search or seizure.

\* \* \* \* \* \*

"5. That the initial search of the Defendant was illegal, and since the product of that search formed the probable cause for the arrest, the arrest was illegal \* \* \*.

\* \* \* \* \* \*

"That all evidence seized from the Defendant and any statements made by the Defendant either prior to or subsequent to his arrest are hereby suppressed \* \* \*."

Jaeger then filed, in the forfeiture proceeding, a motion for return of property pursu-

ant to Rule 40(e), W.R.Cr.P., which provides in part:

"A person aggrieved by an unlawful search and seizure may move the district court for the county in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant * * *. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence in any hearing or trial."

He also filed a motion for summary judgment. In support of these motions, he argued that the State could not forfeit property unless it had been lawfully seized under the provisions of the forfeiture statute. Such a seizure could only occur, Jaeger contended, where the State had probable cause to seize the property at the time of the seizure. The two grounds advanced for his claim that the State could not meet its burden of establishing probable cause to seize his money were:

(a) The issue had been conclusively determined to the detriment of the State pursuant to his motion to suppress evidence, so as to collaterally estop the State from relitigating the issue;

(b) The exclusionary rule required the suppression of evidence in both the criminal action and the forfeiture proceedings, thereby leaving the State no untainted evidence with which to prove its case.

After considering the parties' briefs and after two separate hearings, the district court granted Jaeger's summary judgment motion, explaining its ruling:

"The issues presented are—or the arguments presented are pretty narrow, and accordingly, my holding is equally narrow.

"The State's arguments with respect to the requisites for collateral estoppel, that is, identity of parties and issues, seems to me to draw distinctions without differences. That's particularly true with respect to the parties.

"It's also true, it seems to me, with respect to the issues. Judge Judson determined that there was no probable cause. That was done in a prior hearing with a full opportunity for both sides to develop facts and present their arguments.

\* \* \* \* \* \*

"If there was not probable cause to search these people for the money about which we're now fighting, then there isn't probable cause to believe that the money itself is used or intended to be used in violation of this act.

"Accordingly, the motion for summary judgment is granted."

We agree.

Forfeiture under W.S. 35–7–1049 is appropriate only with respect to certain types of property which the legislature has deemed to be "subject to forfeiture." Of the eight general categories of forfeitable property defined by subsection (a) of the statute, the State attempted to forfeit Jaeger's money pursuant to W.S. 35–7–1049(a)(viii), which provides for forfeiture of

"[a]ny property or other thing of pecuniary value furnished in exchange for a controlled substance in violation of this act including any proceeds, assets or other property of any kind traceable to the exchange and any money, securities or other negotiable instruments used to facilitate a violation of this act. Property used or furnished without the consent or knowledge of the owner is not forfeitable under this section to the extent of his interest."

In addition to substantively limiting the scope of forfeiture to certain defined property, the legislature also imposed certain procedural restrictions on the State's access to that remedy. Section 35–7–1049(b) provides:

"(b) *Property* subject to forfeiture under this act *may be seized* by any law enforcement officer of the state *upon process* issued by any district court or district court commissioner having jurisdiction over the property. *Seizure without process may be made if*:

"(i) The seizure is incident to an arrest or a search under a search warrant or an

inspection under an administrative inspection warrant;

"(ii) The property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal, injunction or forfeiture proceeding based upon this act;

"(iii) *The board or commissioner has probable cause to believe that the property was used or is intended to be used in violation of this act.*" (emphasis added)

 If subsection (b) is to be given any meaningful effect, it must be read to condition the State's right to forfeiture. The legislature's creation of a specific mode of exercising a power excludes all others. *Hopkinson v. State*, 704 P.2d 1323, 1326 (Wyo.1985); *Attletweedt v. State*, 684 P.2d 812, 815 (Wyo.1984). Furthermore, the clear language of the statute requires that these conditions which the legislature has statutorily imposed upon the seizure of property must exist at the time law enforcement officers make the seizure.

 In the present case, the State relies wholly upon subsection (b)(iii) to justify the seizure of Jaeger's money. Accordingly, the State had a dual burden of proof. It ultimately had to prove that Jaeger's money was traceable to the exchange of a controlled substance or otherwise used to facilitate a violation of the Wyoming Controlled Substances Act. However, as a threshold matter, the State also had to establish that either the Wyoming State Board of Pharmacy or the Attorney General had probable cause to believe that such was the case at the time the law enforcement officers seized that money. Jaeger asserted that the State was precluded from establishing its probable cause to seize his money by the prior contrary determination of that issue at his criminal suppression hearing. Since it could not establish one of the necessary conditions to forfeiture under the statute, Jaeger asserted, the State was not entitled to forfeit his money as a matter of law. He is correct only insofar as the State sought to impute, to the "board or commissioner," any probable cause possessed by the police officers who seized his property.

The doctrine of collateral estoppel bars the parties to an action, and their privies, from contesting in a subsequent suit all issues which were actually litigated in the former action. That is, where the parties have had a full and fair opportunity to contest a question which is essential to the determination of their dispute, a final valid judgment on the merits of that dispute by a court of competent jurisdiction precludes the relitigation of that question by those parties and their privies. *Matthews v. Fetzner*, 768 P.2d 590, 592 (Wyo.1989); *Delgue v. Curutchet*, 677 P.2d 208, 213–214 (Wyo.1984).

The State, in this appeal, does not argue that the suppression order issued in Jaeger's criminal prosecution was not a final valid judgment. Rather, it argues that the agency of the State which appears as the nominal plaintiff in forfeiture is neither identical to nor in privity with the State's agency that prosecuted Jaeger. Nevertheless, it would rely on facts within the knowledge of the Gillette Police Department and the Campbell County Prosecutor's office to establish the "commissioner's" probable cause to seize forfeitable property. To accept this argument and to thereby deny preclusive effect to the suppression order would be to elevate form over substance and permit the State to, incongruously, have its cake and eat it too. Not only do the forfeiture provisions of W.S. 35–7–1049 supplement and enhance the State's enforcement of the criminal provisions of Wyoming's Controlled Substances Act, W.S. 35–7–1001 through 35–7–1057, but we note in this case that the Deputy County and Prosecuting Attorney whose office handled Jaeger's criminal prosecution was also appointed as Special Assistant Attorney General for purposes of initiating and conducting these forfeiture proceedings. There is sufficient identity of interest between these agents of the State to warrant the application of collateral estoppel.

 Anticipating that we would find such an identity of interest, the State alter-

natively argues that it had no opportunity to fully and fairly litigate the issues raised by the suppression hearing. The gravamen of this contention appears to be that the State, foreclosed from appealing an unfavorable verdict in a criminal case, could not fully contest the legal conclusions upon which the suppression order rested. The State asserts that it would therefore be unfair to collaterally estop the relitigation of those issues in the forfeiture proceedings. We cannot agree. The State admitted at the suppression hearing that, at the time the police officers detained Jaeger and seized the contested evidence, they had no probable cause to do so. We fail to see how the State could overcome this admission on appeal. Notwithstanding our doubts in that regard, had there been a reviewable deficiency in the suppression proceedings, the State was not foreclosed from pursuing such review either through a bill of exceptions, pursuant to W.S. 7–12–102 or a writ of certiorari. *State v. Heiner,* 683 P.2d 629, 632 (Wyo.1984). We therefore conclude that the State indeed had a full and fair opportunity to litigate the issues determined by the suppression order.

The State finally contends that the issues determined by that order differ from the issues raised in the forfeiture action and that collateral estoppel should not apply. The State is clearly mistaken. We are not concerned here with a suppression order which merely declared that the seizure of Jaeger's money was unlawful. Such an order might properly issue, despite the State's proof of probable cause, based on some deficiency in a warrant or the lack of such circumstances as would permit a warrantless seizure. In the present case, however, the suppression order explicitly set forth the trial court's finding that the officers seized Jaeger's money without probable cause to believe that he or his money had been involved in a drug sale. To the extent that the State relies upon the knowledge of these police officers to establish that the "board or commissioner" had probable cause at the time of the seizure to believe Jaeger's property was forfeitable, the identical issue must be determined as a prerequisite to the State's right to forfeit the money. There is no contention that the issue of the officers' probable cause was not actually litigated nor a contention that the issue was unnecessary to the suppression order. Thus, the district court in this forfeiture action correctly applied the doctrine of collateral estoppel to that issue.

This is not to say that the application of that doctrine is entirely determinative of the State's right to relief. Jaeger only established through such means that the police officers who seized his money had no probable cause to believe that he or the money had been involved in a violation of the act. He did not conclusively establish that the "board or commissioner" had no such probable cause. He did, however, offer evidence of the prior suppression hearing in support of his summary judgment motion which carried the clear implication that no probable cause determination had been made prior to the seizure. Collateral estoppel in no way prevented the State from challenging that implication. Indeed, where the moving party has produced evidence which, if unchallenged, would entitle him to a summary judgment, the non-moving party must come forward with specific facts that establish a genuine issue for trial. *Cordova v. Gosar,* 719 P.2d 625, 635–36 (Wyo.1986). In this regard, the State had only to produce evidence that the "board or commissioner" possessed the requisite probable cause at the time of the seizure, independent of any knowledge of the Gillette Police Department. The State simply did not carry its burden of proof. The district court properly granted Jaeger's summary judgment motion.

Affirmed.

THOMAS, Justice, specially concurring and dissenting.

I also would affirm the decision of the district court in this case except for the inclusion of the $1,400 in fourteen prerecorded hundred dollar bills which were identified as having been furnished by the City of Gillette as buy money. I am intrigued with Justice Urbigkit's discussion of the appropriate treatment for that money,

and he well may be right that it should be treated, in substance, as contraband per se. I have a more fundamental concern, however.

Section 35–7–1049, W.S.1977, in subsection (a), defines the property that is subject to forfeiture. Section 35–7–1049(b) provides that such property may be seized by a law enforcement officer under certain circumstances. Subsection (c) of the statute then requires the prompt institution of proceedings with respect to property that has been seized. Section 35–7–1049(d) then provides:

> "—Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the commissioner subject only to the orders and decrees of the court having jurisdiction over the forfeiture proceedings."

I note in passing that subsection (d) of the statute is remarkably vague with respect to those proceedings to be instituted under that subsection which are alluded to in subsection (c).

Be that as it may, I can find no category in the definitional section of the statute that would include the identified money belonging to the City of Gillette. I am satisfied that while the City parted with possession of this money for purposes of its criminal investigation, it never intended to, nor did it, part with title to the money. Under those circumstances, even conceding that there was no probable cause for the search pursuant to which the money was recovered, the City should not be foreclosed from exercising self help in recovering its own property. The victim of a mugger surely would be entitled to keep his property even though he might have recovered it by an armed robbery. The City should be afforded no lesser rights under the law.

Since the $1,400 is not subject to forfeiture because it does not fit any of the definitions, I cannot discern how the district court acquired jurisdiction over it in the forfeiture proceeding. I understand that this point was not raised by the parties, but we have often said that we have an independent responsibility with respect

to jurisdiction. E.g., *Parker v. Haller,* 751 P.2d 372 (Wyo.1988); *Kurpjuweit v. Northwestern Development Company, Inc.,* 708 P.2d 39 (Wyo.1985); *Hayes v. State,* 599 P.2d 569 (Wyo.1979); *Gardner v. Walker,* 373 P.2d 598 (Wyo.1962).

The status quo, as of the time of the initiation of these proceedings, was that police officers of the City of Gillette were in possession of the entire sum of $11,346 including the City's $1,400 that it had recorded prior to furnishing it for the purpose of criminal investigation. I suppose it was a mistake for the City to include the prerecorded bills with the other money in the forfeiture proceeding. The money was no more subject to forfeiture pursuant to the statute than the automobile that the investigating officer was driving. The City of Gillette, however, could not invest the court with jurisdiction by this mistake and, consequently, the district court acquired no jurisdiction over the money. It is for that reason that I would reverse the judgment of the district court with respect to the $1,400.

I also must confess some consternation with respect to the apparent mixing of the remedy under Rule 40, W.R.Cr.P., and the forfeiture proceedings set forth in § 35–7–1049. In my judgment, the two proceedings should not be mixed, nor should there be any casual acceptance of the fact that they have been mixed. I think there are differences in burdens of proof in criminal proceedings, and even differences in issues, which make it unwise to suggest that a motion for the return of property pursuant to Rule 40(a) is an appropriate pleading in the context of the civil forfeiture proceeding.

URBIGKIT, Justice, specially concurring and dissenting.

I concur in this decision to affirm the summary judgment granted by the trial court except to the portion of the money identified to be "buy money," which was provided by the police to agents who used it to purchase the illegal drugs.[1] I would

---

1. It is recognized that the State failed in trial

court preparation or appellate brief to defini-

hold that the trial court erred as a matter of law because the marked and identifiable buy money, fourteen one hundred dollar bills, is contraband per se which is similar to the purchased drugs and not subject to return whether or not the seizure was illegal. Logically, that cash has a status similar to a stolen vehicle, proceeds of extortion or receipts from a bank robbery.

The governmental agencies should not be relegated to the forfeiture process of W.S. 35–7–1049(e)(v) to re-acquire drug buy money. As to this identifiable, tangible property, acquisition by a drug vendor when exchanged in the police undercover operation should not extinguish the initial public ownership of the money any more than if the money itself had been stolen. Consequently, I would permit retention after re-acquisition of any provable funds advanced by the agency as an asset of the public from which ownership has never actually been severed.[2] Contraband per se are "[t]hings which intrinsically are illegal to possess and are therefore insusceptible of ownership." *State v. Manuel,* 426 So.2d 140, 144 (La.1983). Buy money is analogous to such items because it is not capable of being owned by individuals. Title to buy money does not pass when used for law enforcement purposes to pursue and incriminate persons selling illegal drugs. The character of the transaction by which the sellers acquire the money cannot create a title for them upon exchange for the product which they cannot legally sell.

The police officers who were conducting this extensive drug surveillance operation described that the use of the money "was an investment." I agree that it should be considered to be retainable upon repossession and identification. Application of the forfeiture procedure can and should be confined to property which the custodian may assert some claim as a legitimate owner. Legal possession "denotes custody coupled with a right or interest of proprietorship; and 'possession' is inclusive of 'custody,' although 'custody' is not tantamount to 'possession.'" *Craig v. Gudim,* 488 P.2d 316, 319 (Wyo.1971). Title is not necessarily determined by temporary custody. *See Cheeseman v. Fenton,* 13 Wyo. 436, 80 P. 823 (1905).

The United States Supreme Court in *Trupiano v. United States,* 334 U.S. 699, 710, 68 S.Ct. 1229, 1235, 92 L.Ed. 1663 (1948), *overruled on other grounds sub nom. United States v. Robinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) recognized that "since this property was contraband, they have no right to have it returned to them," even though it was error to refuse petitioner's motion to exclude and suppress the property which was improperly seized. With this case and conclusion, as a general principle, the subject of forfeiture and its relationship to contraband is well litigated. In terms of forfeiture or non-return, there is clearly a difference between two characters of property each of which may have been suppressed as far as criminal evidence is concerned. The difference is between contraband per se to which the custodian had no right of possession and derivative contraband where usage for illegal purposes renders the property subject to forfeiture although the property and its acquisition in itself was not illegal. *One 1958 Plymouth Sedan v. Com. of Pa.,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Funds used for public purposes by law enforcement officers in drug sale surveillance would be contraband per se.

The confusion arises in trying to apply the suppression determination to the forfeiture proceeding. In *United States v. Jeffers,* 342 U.S. 48, 54, 72 S.Ct. 93, 96, 96

tively advance the severable issue of the marked money. With this summary judgment determination of ownership where public funds are involved, title of governmental ownership should not be subject to litigative waiver. I write on a subject not essentially addressed by the litigants to favor a partial reversal of the summary judgment which denies retention of the buy money and which was used for criminal investigation drug purchases. This only involves the bills which were identified by police officer affidavit as the specific fourteen bills in $100 denomination.

2. This case does not present, nor do I consider, a bona fide purchaser for value involving a title inquiry where the holder claims or proves a title interest asserted to be superior to the original owner.

L.Ed. 59 (1951), where the cocaine itself was found, that court detailed:

> Since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on his trial.

The broad principle resulting is that the evidence of suppression has no affect on rights for agency retention if the property is contraband. Funds from the public treasury advanced to document illegal sales of drugs surely acquires that status.

The starting point for the return of illegally seized property is W.R.Cr.P. 40(e) (F.R.Cr.P. 41(e)), whereby "[i]f the motion [for suppression] is granted the property shall be restored unless otherwise subject to lawful detention." Since the buy money was not legally obtained when traded for illegal drugs, that identifiable property is not normally merchantable nor subject to subsequent private party ownership no matter how acquired. Support for this thesis is found in the early Wyoming case of *Cheeseman*, 80 P. 823, where recovery was dependent upon proof of right to the property, and lacking a favorable determination, recovery by the claimant was denied. Consequently, a forfeiture proceeding under W.S. 35-7-1049 is not required for retention of public property even if contended to have been seized through illegal search or seizure when the property is contraband per se. *See People v. Ziomek*, 179 Ill. App.3d 303, 128 Ill.Dec. 356, 341, 534 N.E.2d 538, 543 (1989). Conversely, if the property is derivative contraband, as in this case all of the cash except the identified buy money, retention is inappropriate when seized illegally.

This general rule is stated in 2 J. Varon, Searches, Seizures and Immunities ch. XIV, § 7 at 912 (2d ed. 1974):

> The mere fact that property is illegally seized from the possession of an aggrieved person does not necessarily command its return. We have already stated that the fourth amendment does not guarantee that illegally seized property will be returned to its owner. This applies particularly to contraband property, or property forfeitable or subject to lien. The general rule is that if property unconstitutionally seized is contraband or illegal per se, the owners have no right to have it returned to them.

"[S]uch property is not required to be returned to the owner when it is contraband or forfeitable." *Welsh v. United States*, 220 F.2d 200, 202 (D.C.Cir.1955). *Cf. United States v. Wright*, 610 F.2d 930, 941 n. 50 (D.C.Cir.1979), where the court required return of the cash, but said:

> We assume, arguendo, that appellants would not be entitled to the return of money if it were the proceeds of crime.

Similar in result is *United States v. La-Fatch*, 565 F.2d 81 (6th Cir.1977), *cert. denied* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978), where the defendant had been acquitted in state court of extortion and then filed a proceeding in federal court for the return of the $50,000 which had been paid to him as the funding for the contended extortion process. That court said:

> The acquittal of LaFatch in the criminal proceedings did not necessarily mean that he is the rightful owner of the money. In the criminal proceedings the jury determined that the evidence was not sufficient to establish the guilt of La-Fatch beyond a reasonable doubt.

*Id.* at 84. Consequently, a civil determination of the title ownership remained between LaFatch and the party subject to the extortion. As stated by 3 C. Wright, Federal Practice and Procedure: Criminal 2d § 673 at 754 (1982), "[a] motion to suppress evidence may be made under Rule 41(f) even though the items seized are contraband, and the movant has no right to their return." Obviously, the right to suppress contraband as evidence is different from the right to its return as illegally possessed property.

In *People v. Mota*, 27 Ill.App.3d 982, 327 N.E.2d 419, 421 (1975), where illegal seizure was shown and the issue of forfeiture remained for determination, the rule is stated:

We feel that it is important to determine if the money seized in this case is a contraband per se or a derivative contraband since the former will be forfeited even when illegally seized. Per se contrabands are objects the possession of which without more, constitutes a crime * * *, while a derivative contraband is forfeitable only because of its use in criminal activity.

The criminal nature of the knowing acquisition of buy money from the sale of drugs surely needs no extended disputation. These funds as a critical element of the criminal offense are contraband to the recipient. Consequently, I would follow the result of *People v. Ward*, 685 P.2d 238, 239 (Colo.App.1984), where the defendant "was in no way entitled to claim the $620 he received as payment for the cocaine" from the agents making the purchase. *See also Stewart v. People*, 193 Colo. 399, 566 P.2d 1069 (1977), where the defendant could not claim the money received from forged checks.

Although the seized property was suppressed in *United States v. Scott*, 149 F.Supp. 837 (D.D.C.1957), the court then denied return of some items as stolen property which included coins. "Bait money" was found to fall within the non-return exception of F.R.Cr.P. 41(e) as contraband, although other non-criminal implement property was restored following illegal seizure. *United States v. Margeson*, 259 F.Supp. 256 (E.D.Pa.1966). *Matter of 2029 Hering Street, Bronx, N.Y.*, 464 F.Supp. 164, 173 (S.D.N.Y.1979) provides a case where the evidence presented at hearing tended "to show that the seized property may have been the fruit of an illegal scheme. As such, that property is presently subject to lawful detention and will not be returned to the applicants."[3] *Cf. Eggleston v. State of Colorado*, 873 F.2d 242 (10th Cir.1989), relating to title and claims priorities.

Another case very similar in result is *United States v. White*, 660 F.2d 1178 (7th Cir.1981), where forfeiture of $38,394 in United States currency developed. In difference, although summary judgment on the majority of the money was reversed, police retention of $3,800 in prerecorded funds seized from a defendant's apartment was not contested.

One proceeding, not at issue on this appeal, sought the forfeiture of the $3,800 in pre-recorded funds seized from White's apartment. White did not contest that forfeiture action. The second proceeding sought the forfeiture of the remaining $38,394 of the seized money. *Id.* at 1185.

I would reverse the summary judgment to permit retention by the State of the marked money used by the police to buy the drugs as cash which shortly thereafter came back into the hands of the State. *See People v. Bustam*, 641 P.2d 968 (Colo. 1982).

---

**3.** Issue preclusion by conviction was denied in *United States v. $100,000 in United States Currency*, 602 F.Supp. 712 (S.D.N.Y.1985), where the controversy was whether the money came not from crystalline white powder but was won in the Puerto Rican lottery. Despite conviction, the judge determined that the controverted issue of ownership and source of the funds required trial upon remand. Probable success of the claimant in that trial was not over-emphasized.